IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of | ) | Case No. BK20-80750 |
| | ) | |
| PROPERTY VENTURES, LLC, | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |
| | ) | |

**Order Granting Debtor's Objection to Claim No. 1**

This matter is before the court on the objection filed by Debtor Property Ventures, LLC to Proof Claim No. 1 of John Murante. Patrick Turner appeared for Debtor. Regina Schneider appeared for John Murante. Michael Milone and Tyler Masterson appeared for Guaranty Solutions LLC. Other appearances included Donald L. Swanson, Subchapter V Trustee, Ryan Kunhart for The Gloria A. Murante Intervivos Revocable Trust, and Craig Knickrehm for First Westroads Bank. Filings #83, 84, 85 and 86, and Proof of Claim #1 were offered and received without objection.

During the hearing, the court expressed concern that the volume of evidence was slim given the factual and legal issues raised. The court inquired whether the parties desired a full evidentiary hearing with live witness testimony. Debtor's counsel suggested the court bifurcate the issues and address only whether John Murante's claim is secured, saving for another day whether the indebtedness exists and if so, its amount. John Murante's counsel desired to proceed on the affidavits that were filed. The court will address all issues raised in the objection.

Proof of Claim No. 1 includes an opinion of the Nebraska Court of Appeals captioned *John Murante v. Sam Murante, Sr.*, which John contends is preclusive of the issues raised in the claim objection. The court questioned whether it was appropriate to consider the facts stated in the opinion even if it was not preclusive. Both Debtor and John Murante's counsel indicated it was appropriate to do so. Given the otherwise slim evidence, and because the opinion is attached to the claim as the factual basis for the claim, the court will consider the facts therein.

**Findings of Fact**

1.  John Murante filed Proof Claim No. 1 ("POC #1") in in the amount of $391,228.81 as secured by Debtor's real estate.

2.  Debtor Property Ventures, LLC, is a Nebraska limited liability company. Its sole member is The Gloria Murante Intervivos Revocable Trust. (Fil. #1). Gloria Murante is deceased.

She was married to John's brother, Sam Murante. They divorced in 2011. (POC #1, pp. 12 & 19).

3.  John contends that in 2002, he paid Debtor $50,213 for a 12.5% interest in the South Omaha City Hall ("SOCH") building, with funds he withdrew from 5622 Ames, LLC. (Fil. #84, ¶ 4). Debtor asserts John never received funds from 5622 Ames, LLC, and never paid Debtor $50,213. (Fil. #86, ¶ 16).

4.  John supports his claim with a "Conveyance Agreement", which conveys a 25% undivided interest in the SOCH building for $100,000 "in hand paid." The agreement is signed by Sam Murante Sr. and Bob Pelshaw, each as Manager of Debtor, and as "Grantors", and by John Murante and Sam Murante Jr., as "Grantees". (Fil. #84, ¶ 6 & p. 6).

5.  Unresolved questions regarding the Conveyance Agreement abound.

    a.  When and under what circumstances was it signed? John Everroad, Debtor's financial manager since 2005, first learned of the Conveyance Agreement no earlier than 2013. (Fil. #86, ¶¶ 14 & 18). It is not dated, but it contains a provision allowing Grantors to "buy back" the interest within 24 months of August 5, 2002. (Fil. #84, p. 6). John states only that it was signed. He does not state when. (Fil. #84, ¶ 5).

    b.  John asserts he "never received a memorialized ownership interest" in the SOCH building. (Fil. #84, ¶ 6). Why does the Conveyance Agreement, which grants John a 25% undivided interest, not constitute a memorialized ownership interest?

    c.  Why did John pay Debtor $50,213 when, per the Agreement, a 12.5% interest would cost $50,000? (Fil. #84, ¶ 4 & p. 6).

    d.  Is the one-page document the complete agreement? The footer contains the words "(last page) Page 4 of 4". (Fil. #84, p. 6). Are there other pages, terms, or conditions precedent?

6.  John testified he received an email from Sam on July 9, 2007. The document does not contain typical email headers and appears to be an unsigned memo. Therein Sam states that Debtor cannot transfer title to the SOCH, but "the attached equity accounting shall be ledgered as a payable of Property Ventures and for the benefit of the investors as a receivable or payment in full or partial payment to the investors." (Fil. #84, p. 8). The exact meaning of this is not clear, but John's interpretation is. John calls it a promise that "a receivable was owed to me as a result of the 2002 Conveyance Agreement." (Fil. #84, ¶ 6 and p. 8).

7.  Over six years later, on August 1, 2013, Sam executed two affidavits to encumber Debtor's real estate. (Fil. #83, pp. 24-27; Fil. #84, ¶¶ 8-11 & pp. 13-18; Fil. #85, pp. 4-14). On August 1, 2013, Sam was not a member or owner of Debtor, and "possessed no authority to act on behalf of Debtor." (Fil. #86, ¶ 18). Debtor does not dispute this and

offers no evidence to the contrary. It is not clear how long before August 1, 2013, Sam's membership, management, and authority terminated or whether it was part of Sam and Gloria's divorce in 2011.

8.   The Affidavits are signed by Sam only in his individual capacity, not on behalf of Debtor. (POC #1, p. 13; Fil. #84, ¶¶ 8-11 & pp. 13-18; Fil. #85, pp. 4-14).

9.   The Affidavits were separately filed with applicable register of deeds. Except for the real estate descriptions, the affidavits are substantively identical. They provide:

> 2. ***I am the borrower*** in the attached promissory note and certify that it is true and accurate and that ***at the time the note was signed*** in 06/01/06, ***I was*** the managing member of Property Ventures, LLC and recognize that Property Ventures did borrow $101,768.12 and is then responsible to John M. Murante (Holder) for the repayment of that debt of money borrowed.

> (Fil. #84, ¶¶ 8-11 & pp. 13-18; Fil. #85, pp. 4-14) (emphasis added).

10.  The copy of the promissory note attached to the affidavits is dated June 1, 2006, and provides:

> For value received the undersigned, ***Sam Murante Sr.*** (herein called "Borrower") promises to pay John M. Murante, or assignee herein called "Holder") . . .  the principal sum of $101,768.12[.]

> . . .

> In this Note, the singular shall include the plural and this Note shall be the joint and several obligation of ***each*** Borrower.

> (Fil. #84, pp. 19-20) (emphasis added).

11.  Sam signed the note individually. Although Property Ventures is not listed as a "Borrower" in the body of the note, Sam also signed the note "Property Ventures LLC by Managing Member." Per a handwritten note dated May 5, 2010, Sam extended the obligation to December 31, 2013. Sam signed the extension individually and as "Managing Member of PVLLC". (Fil. #84, pp. 19-20).

12.  John believed "the note was 'essentially' a buyout of his ownership and also factored in the tax credits promised to him under the Conveyance Agreement." (POC #1, p. 13). The Nebraska Court of Appeals found, "According to John (and not disputed by Sam), the promissory note was related to Sam buying out John's interest in the SOCH property." (POC #1, p. 19). It also noted, "Sam also said the note regarded 'monies owed from the loan repayment from Property Ventures'." (POC #1, p. 13).

13. Sam "crafted" the note contemporaneously with the 2013 affidavit, adding the handwritten revisions to make it "look better." His goal was to prevent a potential judgment lienholder from acquiring Debtor's real estate. (POC #1, p. 13). No further details were offered into evidence.

14. John first received the note and the affidavit in August 2013. (*See* POC #1, p. 12) ("Sam presented him an affidavit with an attached promissory note in 2013."). In his affidavit, John confirms, "I received a signed document from Sam Murante, Sr. entitled 'AFFIDAVIT to include promissory note,' and dated August 1, 2013. Accompanying this affidavit was a promissory note dated June 1, 2006." (Fil. #84, ¶¶ 8-13 & pp. 19-20).

15. On January 18, 2017, John filed suit against Sam and Debtor in the District Court of Douglas County, Nebraska, at Case No. CI17-419, asserting claims for breach of promissory note and unjust enrichment. (Fil. #85, pp. 15-24). In the lawsuit, John alleged:

    a. The promissory note "was given by Defendants, as makers, to the Plaintiff, as holder. Defendants acknowledged their obligation to Plaintiff in an affidavit filed with the Register of Deeds of Douglas County, dated August l, 2013." (Fil. #85, p. 16, ¶ 7).

    b. "***On June l, 2006***, Plaintiff loaned Defendants . . . $101,768.12." (*Id*., ¶ 8) (emphasis added).

    c. "On August 1,2013, ***Sam Murante signed and filed*** the Affidavit to secure repayment of the Note to Plaintiff. In the affidavit, ***Sam pledged*** the properties[.]" (*Id*., ¶ 10) (emphasis added).

16. Sam and Debtor retained the same legal counsel and filed a single Answer on February 20, 2017. Sam and Debtor denied the foregoing allegations. (Fil. #85, pp. 25-28, ¶¶ 7-10). They affirmatively alleged lack of consideration, that the note was not enforceable, and "Defendants lacked authority to obligate." (*Id*., p. 26, ¶¶ 2 & 11).

17. On December 13, 2017, Debtor filed its first Chapter 11 case in this court at Case No. BK17-81762. Debtor filed a suggestion in bankruptcy with the Douglas County District Court the next day. (Fil. #85, Pg. 30).

18. Because no one obtained relief from stay, the district court considered only John's claim against Sam. In March 2019, John was granted summary judgment on his claim for default of promissory note. The Court of Appeals noted that "Property Ventures was in bankruptcy and was not part of the motions." (POC #1, p. 14).

19. Sam did not contest the validity of the promissory note or its terms as part of the summary judgment motion. Likewise, on appeal Sam did not dispute that the promissory note was a valid contract between Sam and John. (POC #1, p. 15). Instead, Sam

- 4 -

contended he was released as a third-party beneficiary of a settlement agreement between John Murante and Gloria Murante. (POC #1, pp. 16-19).

20. John asserts that Debtor is in default of the note and that he never received a payment. (Fil. #84, ¶ 14).

21. Debtor seeks to avoid a lien, which requires an adversary proceeding. Debtor and John waived the requirements of Fed. R. Bankr. P. 7001 and agreed to treat the claim objection as a contested matter under Fed. R. Bankr. P. 9014. (Fil. #65).

22. Another creditor, Guaranty Solutions, LLC, joined the objection to John's claim. (Fil. #73).

### Conclusions of Law

*John Murante's Lien is Avoidable*

John asserts the 2013 affidavits encumber Debtor's real estate. The parties dispute whether Sam's acknowledgement meets the technical requirements for recording instruments, whether the affidavit is binding as between Debtor and Sam, and whether it put third parties on notice of John's claim against Debtor. *See* Neb. Rev. Stat. §§ 76-238; 76-241.

The parties agree that the affidavits should be construed as mortgages under Nebraska law because they purport to create security interests in real estate. *See* Neb. Rev. Stat. § 76-203 (defining a deed as "every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged, or assigned or by which the title to any real estate may be affected…."); *Id*. § 76-251 (construing deeds intended only as security as a mortgage); *Id* § 30-2209(27) ("Mortgage means any conveyance, agreement, or arrangement in which property is used as security.").

Nebraska statutes require mortgages to be both signed by the grantor and properly acknowledged. *See id*. § 76-211. Debtor is a limited liability company. In the case of a limited liability company, a member or agent must acknowledge that "he or she signed the instrument *on behalf of* the limited liability company *by proper authority* and he or she executed the instrument *as the act of* the limited liability company for the purposes therein stated." *Id*. § 64-205 (emphasis added); *see also id*. § 21-136 (providing that limited liability companies are bound by, as applicable, a member or manager).

Sometime before September 1, 2013, Sam's interest in Debtor and Sam's authority to act on behalf of Debtor terminated. Therefore, on the date he signed the affidavits, Sam could not legally bind Debtor and could not encumber Debtor's property. The affidavits, on their face, disclose Sam's lack of authority. Therein Sam states, "***I am*** the borrower" and "***at the time*** the note was signed in 06/01/06, ***I was*** the managing member of Property Ventures, LLC."

Because Sam was not authorized to encumber Debtor's property, John requests the court use equitable powers to determine and carry out the intent of the parties. He suggests the note, which purports to be signed in 2006 when Sam had authority, and the affidavit, signed in 2013, when Sam did not, should be construed together to determine this intent. *See, e.g, TNT Cattle Co., Inc. v. Fife*, 937 N.W.2d 811, 834 (Neb. 2020) ("Instruments made in reference to and as part of the same transaction are to be considered and construed together.").

Construing the note and the affidavits together does not demonstrate Debtor intended John have a secured claim. The affidavit is not the act of Debtor. The note, even if the act of Debtor, does not reference a secured claim. In addition, the record is reasonably clear that John did not pay $101,768.12 to Debtor on June 1, 2006. John's position is he invested $50,213 into the SOCH building in 2002. In exchange, John was to receive a 12.5% interest in the building, as evidenced by the Conveyance Agreement. On June 1, 2006, John's interest was bought out and converted to a general receivable of Debtor. This buy-out formed the basis for John alleging in his state court complaint, "On June 1, 2006, Plaintiff loaned Defendants . . . $101,768.12." In the state court proceeding John testified, "the promissory note was related to Sam buying out John's interest in the SOCH property." The buy-out, according to John, was, effectively, seller financed. Construed together, the two documents do not support that John should, equitably, have a secured claim.

The affidavits are improperly acknowledged and were not the act of the Debtor. They are not binding as between Debtor and John. They are avoidable by the Debtor in possession pursuant to 11 U.S.C. § 544 for the benefit of Debtor's bankruptcy estate pursuant to § 551.

*Issue Preclusion*

John asserts the Nebraska state courts determined that Sam signed the note as managing member of Debtor, and that the note is valid and enforceable against Debtor. He asserts that issue preclusion bars reconsideration of these issues. Issue preclusion is governed by state law. In Nebraska:

> Under the doctrine of collateral estoppel, or issue preclusion, when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit. There are four conditions that must exist for issue preclusion to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

*RM Campbell Indus., Inc. v. Midwest Renewable Energy, LLC*, 886 N.W.2d 240, 250 (Neb. 2016).

The applicability of issue preclusion is a question of law. *See McGill v. Lion Place Condo. Ass'n*, 864 N.W.2d 642, 650 (Neb. 2015). "The party relying on issue preclusion in a present proceeding has the burden to show that a particular issue was involved and necessarily determined in a prior proceeding." *Jordan v. LSF8 Master Participation Tr.*, 915 N.W.2d 399, 415 (Neb. 2018).

In bankruptcy cases, preclusion "should be invoked only after careful inquiry because it blocks unexplored paths that may lead to truth." *Ladd v. Ries (In re Ladd)*, 450 F.3d 751, 755 (8th Cir. 2006) (citing *Brown v. Felsen*, 442 U.S. 127, 132 (1979)). Moreover, "In contrast to claim preclusion, the doctrine of issue preclusion does not apply to matters which might or could have been litigated but were not." *RW Campbell*, 886 N.W.2d at 250; *see also Hara v. Reichert*, 843 N.W.2d 812, 817 (Neb. 2014) ("Issue preclusion 'applies only to issues *actually litigated*' and may be used by a nonparty in a later action, either offensively or defensively.") (emphasis added).

Several elements of issue preclusion are lacking. The issues in this matter are not identical to the issues decided by the Nebraska state courts. The state courts found the note to be a valid and binding obligation of Sam. They did not, and could not, decide whether it was a valid and binding obligation of Debtor because the automatic stay prevented the continuation of the action against Debtor. *See* 11 U.S.C. § 362(a)(1). Debtor's liability was not actually litigated or decided. Issue preclusion cannot apply.

The automatic stay also prevented the state courts from deciding any defenses Debtor raised. Nothing prevents co-makers from raising separate defenses to a claim, for example if one maker forges the signature of another maker. A determination that the signing maker is liable is not preclusive as against the other maker. Similarly, Debtor is not precluded from establishing, in this proceeding, defenses unique to Debtor, such as lack of authority.

Preclusion also cannot apply because Debtor was not a party to the judgment and there is no privity between Debtor and Sam. Due process requires that issue preclusion "operates only against persons who have had their day in court either as a party to a prior suit or in privity with a party to the prior litigation." *Thomas Lakes Owners Ass'n v. Riley*, 612 N.W.2d 529, 536–37 (Neb. Ct. App. 2000). "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *McGill*, 864 N.W.2d at 655–56. "[T]he mere fact that litigants in different cases are interested in the same question or desire to prove or disprove the same fact or set of facts is not a basis for privity between the litigants. *Thomas Lakes Owners Ass'n*, 612 N.W.2d 529 at 537.

John asserts privity exists because Sam controlled the Debtor and had a commonality of interests with the closely held entity. Sam signed the note and affidavits, which John asserts demonstrates control. Also, Sam and Debtor were represented by the same attorney in the state court action, which John asserts demonstrates that Sam and Debtor's owners treated

Debtor's interests as identical. Finally, he asserts Sam adequately protected Debtor's interests.

These arguments are misplaced. The affidavit and accompanying note do not demonstrate control. Sam was not a member or manager of Debtor during the trial. He was not authorized to act on its behalf. While Debtor and Sam were initially represented by the same attorney, the representation ended eleven months later, when Debtor filed for bankruptcy protection and obtained new counsel. It is not uncommon for defendants to obtain common representation to save money, which a bankrupt or nearly bankrupt Debtor certainly would find appealing.

In addition, issue preclusion cannot apply because after the case against Debtor was stayed, Sam did not protect or try to protect Debtor's interests. Preclusion does not apply where a party has "little motivation" or "little incentive" to fully litigate an issue." *Ladd*, 450 F.3d at 753 (citing *Lovell v. Mixon*, 719 F.2d 1373, 1377 (8th Cir. 1983)). Sam only litigated the issue of whether he was personally released as a third-party beneficiary of an agreement between Gloria Murante and John. Debtor had alleged the note was not enforceable, that the note lacked consideration, and that Sam was not authorized to obligate Debtor. Sam did not litigate these issues. Sam admitted the note was enforceable. He admitted he signed it. He did not dispute consideration or enforceability. He had little or no motivation to litigate whether he was authorized to obligate Debtor.

To invoke issue preclusion in this case would deny Debtor due process. John did not obtain relief from stay to obtain a judgment against Debtor. John's position, that he could obtain a preclusive judgment against Debtor when the case was stayed against Debtor, would obviate the benefit of the automatic stay.

### *John Murante's Claim*

Even though issue preclusion does not apply, the question of whether John has an unsecured claim against Debtor remains. John asserts that his debt is on account of a promissory note from Debtor dated June 1, 2006, in the principal amount of $101,768.12. As stated above, the note is a culmination of a buyout of John's interest in the SOCH building in exchange for a general receivable owed by Debtor. John asserts the note supports that John financed the buy-out and the amount he was owed.

Nebraska's Uniform Commercial Code applies to the promissory note because it is a negotiable instrument. *See* Neb. U.C.C. § 3-104. The note is an unconditional promise to pay a fixed amount, at a definite time, payable to bearer or order, without any other undertaking or instruction. *Id*.

A negotiable instrument must be issued, which is "the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, *for the purpose of giving rights* on the instrument to any person." Neb. U.C.C. § 3-105 (emphasis added). A note that is not issued is

binding between the parties but is subject to the defense of non-delivery. *Id.*; *see also F.D.I.C. v. Mark David-Washington Blvd. Assocs.*, 850 F. Supp. 121, 123 (D. Conn. 1994) ("Until the note was executed and delivered, the note was not binding upon the parties."); *In re Sheskey*, 263 B.R. 264, 267 (Bankr. N.D. Iowa 2001) ("As a general rule, a note has no effect unless it is delivered.") (citing *Matter of Estate of Balkus*, 381 N.W.2d 593, 597 (Wisc. Ct. App. 1985)). In addition, the signor must be authorized to sign. *See* Neb. U.C.C. § 3-403(a). "[A]n unauthorized signature is ineffective" unless it is in favor of a person who "in good faith pays the instrument or takes it for value." *Id.* An unauthorized signature may be ratified. *Id.* "An instrument may be antedated or postdated." *Id.* § 3-113.

The note may bind Sam, but it does not bind Debtor. Sam created it contemporaneously with the 2013 affidavit. He made handwritten revisions and dated them as occurring in 2010 to make the note "look better." This testimony is not disputed. At the time it was signed, Sam lacked authority to draft, execute, or issue a note on behalf of Debtor. Even if Sam had executed the note in 2006, and extended it in 2010, at a time when he had authority, Sam did not issue it to John until August 1, 2013. At the time of issue Sam lacked authority to issue the note and grant legal rights to his brother as against Debtor.

Even through the note does not bind Debtor, the foundation of John's claim is the liquidation of his interest in the SOCH building and conversion of the interest into a receivable. Debtor asserts John has no claim as a receivable or otherwise because the agreements lack consideration. "Lack of consideration is relevant to whether the parties have formed an enforceable contract." *Irwin v. West Gate Bank*, 848 N.W.2d 605, 610 (Neb. 2014). Debtor offers extrinsic evidence demonstrating it never received any payment from John, either in 2002 or 2006. This extrinsic evidence is improper to prove lack of consideration. "That the contract was lacking in consideration from its inception may be shown by extrinsic evidence, providing the proof thereof does not contradict or vary the contractual consideration named in the written contract." *Id.* The Conveyance Agreement and note both recite money paid as consideration. Debtor's evidence that it received no payment improperly contradicts the named consideration. Consideration is not lacking.

Debtor's evidence could be used to prove a failure of consideration.

> A lack of consideration means no contract is ever formed because no consideration exists or none was intended to pass. A failure of consideration, on the other hand, means the contract is valid when formed but becomes unenforceable because the performance bargained for has not been given.

*Lindsay Int'l Sales & Serv., LLC v. Wegener*, 917 N.W.2d 133, 141 (Neb. 2018) (citations omitted). Where failure of consideration is pleaded as a defense to an action on a negotiable instrument, the burden is upon the defendant to prove such defense. *Blaha GMC-Jeep, Inc. v. Frerichs*, 317 N.W.2d 894, 899 (Neb. 1982).

Debtor supports its claim with the affidavit of John Everroad. Mr. Everroad has maintained the books and records of both Debtor and 5622 Ames, LLC, since 2005. According to Mr. Everroad, John never borrowed funds from 5622 Ames, LLC, and never paid them to Debtor. His conclusions are based upon his personal involvement with both companies since 2005, his "investigation of the finances" of both companies, his correspondence with Sam and John, and his review of the "books and records" of both companies. Mr. Everroad does not identify with any specificity what his investigation included, the content of his discussions, or the finances, books, and records he reviewed. He does not provide copies of any documents or records including bank statements. His conclusory statements are insufficient to meet Debtor's burden to defeat John's claim to a general receivable.

However, fully accepting John's position, Debtor has owed John a general receivable since June 1, 2006. John did not file suit against Debtor until eleven years later, on January 18, 2017. Even if the receivable was created at or around the time of Sam's July 9, 2007, letter to John, and assuming it sufficient to constitute a promise in writing, John had five years to file suit before his claim became time barred. *See* Neb. Rev. Stat. § 25-205(1).

The final question is whether the indebtedness was acknowledged and reinstated. "In any cause founded on contract, when . . . an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise…." Neb. Rev. Stat. § 25-216. "Acts or declarations relied on as acknowledgments sufficient to remove the bar of the statute of limitations will be closely scrutinized." *Kotas v. Sorensen*, 345 N.W.2d 1, 3 (Neb. 1984), "An acknowledgment of a debt, to remove the bar of the statute of limitations, must be a distinct, unqualified, unconditional recognition of an obligation for which the person making the admission is liable." *Id.* (citing 51 Am. Jur. 2d *Limitation of Actions* § 328 at 827–29 (1970)).  Certain acts are insufficient:

> [D]eclarations by a debtor that he has no funds to pay a debt; a mere admission of legal liability; an admission of the original justness of the claim; a mere acknowledgment of the debt, although in writing, as having once existed;…. It has been held that a mere reference to the indebtedness, although consistent with its existing validity and implying no disposition to question its binding obligation, or a suggestion of some action in reference to it, is not such an acknowledgment as is contemplated by the statute.

*Id.*

The only written acknowledgement is the 2013 affidavits and handwritten language in the note. As discussed above, the note was not issued by the Debtor. The affidavits were not an acknowledgment by Debtor. The affidavits are, at best, a mere admission of legal liability by Sam. They do not display a willingness by Debtor or Sam to pay the debt in the future. Because the note, including any handwritten extensions, is not an obligation of Debtor and

because even assuming Debtor owed John a general receivable, the receivable is stale. Debtor's claim objection should be granted.

IT IS THEREFORE ORDERED:

1.  Debtor's objection to Proof of Claim #1 filed by John Murante is granted;

2.  Any lien John Murante claims against property of Debtor is avoided; and

3.  John Murante does not have an enforceable claim against Debtor's bankruptcy estate.

Dated: December 9, 2020

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy Judge


Notice given by the Court to:
*Patrick Turner
Frank Schepers and Regina Schneider
Michael Milone and Tyler Masterson
Donald L. Swanson
Ryan Kunhart
Craig Knickrehm


Movant (*) is responsible for giving notice to other parties if required by rule or statute.